**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SAMUEL KATZ, individually and on behalf of all others similarly situated, | § | |
| Plaintiff, | § | Case No. 3:23-cv-00145-S |
| v. | § | |
| CALIBER HOME LOANS, INC. and CONVERSION KINGS, LLC, | § | |
| Defendants. | § | |

**PLAINTIFF'S OPPOSITION TO TOWNS LAW FIRM, P.C.'S MOTION TO WITHDRAW AS COUNSEL FOR CONVERSION KINGS, LLC**

Plaintiff Samuel Katz respectfully opposes the Motion to Withdraw as Conversion Kings, LLC's Counsel (ECF No. 115) (the "Motion") filed by Cody Towns and Elizabeth Gebert of Towns Law Firm, P.C. ("Towns Law Firm").

This case did not go quiet on its own. It went quiet in the middle of a discovery dispute that Plaintiff was one day from putting before the Court, and which Plaintiff has now filed, as more fully detailed in Plaintiff's motion to compel. Two and a half years later, the case is back. On August 12, 2026, Plaintiff's counsel advised Towns Law Firm that "we still have this outstanding discovery issue, which with the case resuming we intend to bring to the Court's attention." That same day, the Court entered its Second Amended Scheduling Order. ECF No. 113. Six days later, Towns Law Firm moved to withdraw. The sequence from January 2024 has repeated itself, notice that Plaintiff intends to seek judicial relief on discovery, followed immediately by a filing that removes Conversion Kings from the case.

Plaintiff does not ask the Court to keep two lawyers in a representation their client has abandoned. However, Plaintiff asks the Court to resolve the discovery dispute before it, including

potentially discoverable evidence in Towns Law Firm's possession, before it releases the only participant left who can do anything about it. That request is not abstract. At Conversion Kings' examination under 11 U.S.C. § 341, its principal testified under oath that the company's business records are stored digitally and are in the possession of Conversion Kings' counsel in this case, that is, in the possession of Towns Law Firm. He and the company's former business development manager expressed surprise that Plaintiff did not already have those records through this litigation. If that testimony is accurate, the records that Conversion Kings spent January 2024 refusing to produce have been sitting in its lawyers' files ever since, and the Motion now asks this Court to let those lawyers, and those files, leave.

The Motion is also incomplete in another respect the Court should know about. It represents that Conversion Kings has "no employees, principals, representatives, or agents," ECF No. 115 ¶ 3, and identifies only former employee Mr. Wood and bankruptcy counsel Mr. Giles as counsel's contacts. It does not mention Mr. Muthaler, the sole member of Conversion Kings' parent, LeadMax LLC, who appeared and testified for the company at its § 341 examination.

The Motion should be denied without prejudice pending resolution of the outstanding discovery or granted only on the conditions set out below.

## BACKGROUND

### A. Conversion Kings refused to produce the calling records, and then refused to confer.

Plaintiff brings this putative class action under the Telephone Consumer Protection Act arising from telemarketing calls placed by Conversion Kings on behalf of Defendant Caliber Home Loans, Inc. ("Caliber"). Plaintiff served interrogatories and requests for production on Conversion Kings. On January 8, 2024, Conversion Kings served responses consisting largely of boilerplate objections and withholding the categories of material that matter most in a TCPA class case,

including a number of requests for production dealing with vendor relationships, relationships with Caliber, and class calling records, as more fully set forth in Plaintiff's Motion to Compel.

Plaintiff's counsel sought to confer on these deficiencies on January 9, January 12, January 17 (by telephone), January 19, and January 23, 2024. Conversion Kings did not respond substantively to any of them and subsequently declared bankruptcy a few days later.

**B. Defendant filed bankruptcy seven minutes after notice of a motion to compel.**

On January 23, 2024, Mr. Towns wrote that it was "highly unlikely that we continue representation in the case," and that "we will all hear from different counsel on behalf of Conversion Kings in the next few days." No substitute counsel was ever heard from. Fourteen minutes later, Mr. Towns advised that Conversion Kings would not appear for the deposition Plaintiff had noticed, and on January 29, 2024 at 4:47 p.m., Plaintiff's counsel wrote that, having never heard about the promised substitution, he intended to file a motion to compel "as soon as tomorrow." At 4:54 p.m., seven minutes later, Mr. Towns replied: "Conversion Kings filed bankruptcy this afternoon. A notice of stay of the case will be filed shortly." This Court administratively closed the case the next day without prejudice to its being reopened after the related bankruptcy proceeding is concluded or the stay is lifted.

**C. At the § 341 examination, Conversion Kings' principal testified that the records are in the possession of its counsel in this case.**

On March 26, 2024, Conversion Kings appeared for a continued examination under 11 U.S.C. § 341, through Mr. Muthaler and Mr. Wood. Muthaler was the sole member of the LLC. Wood was the business development manager of Conversion Kings.

Their testimony bears directly on this Motion. Mr. Muthaler testified that Conversion Kings' records are stored digitally and are in the possession of Conversion Kings' counsel in this case, the Towns Law Firm, and that all of the information sought exists in the company's business

records as they existed when it shut down. Both witnesses indicated they assumed Plaintiff already had the records through this litigation.

Mr. Muthaler was the sole member of LeadMax LLC, an Arizona holding company that was Conversion Kings' parent and shared its ownership. Mr. Wood was Conversion Kings' business development manager and was, by his own account, in charge of its telemarketing operations. Mr. Wood confirmed that the calls to Plaintiff were made on behalf of Caliber, and that Caliber was scheduled as a co-debtor because Caliber contracted with Conversion Kings to perform telemarketing services. Conversion Kings' own employees physically dialed the calls to Plaintiff. Later, as the company wound down, it retained a staffing agency or call center to supply dialers. Neither witness could recall that entity's name, but both testified that the name is in the business records, which is precisely the information Interrogatories 2-4 sought and Conversion Kings refused to give. Finally, Conversion Kings' financial records remain with its accountant, Pox Accounting. The bankruptcy estate was fully administered and the Chapter 7 case was closed on June 18, 2025.

**D. The case reopens, and the January 2024 sequence repeats.**

On July 28, 2026, Plaintiff moved to reopen. ECF No. 104. The Court granted that motion on July 29, 2026 and ordered a proposed scheduling order by August 12, 2026. ECF No. 105. On August 7, 2026, Towns Law Firm conferred with Plaintiff's counsel about withdrawing and was told Plaintiff opposed. ECF No. 115 at 4. It did not file then.

On August 12, 2026 at 12:20 p.m., Plaintiff's counsel wrote to Mr. Towns: "We still have this outstanding discovery issue, which with the case resuming we intend to bring to the Court's attention." Counsel also asked whether Towns Law Firm represented LeadMax LLC or Mr. Wood.

At 1:25 p.m., Mr. Towns replied that the firm represents only Conversion Kings, that its bankruptcy counsel reports the entity no longer exists, and that it intended to withdraw.

That same day, the Court entered the Second Amended Scheduling Order, setting a March 27, 2028 trial, a June 22, 2027 class certification deadline, and a September 7, 2027 discovery cutoff. ECF No. 113. Six days later, Towns Law Firm filed this Motion. ECF No. 115.

## ARGUMENT

### I. Withdrawal requires leave, and the Motion omits facts material to that decision.

"An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client." *Matter of Wynn*, 889 F.2d 644, 646 (5th Cir. 1989); *accord* N.D. Tex. L.R. 83.12. The decision is committed to the Court's discretion, and the Court may weigh the posture of the case, the effect on the parties who remain, and whether the timing will disrupt the orderly progress of the litigation. *Id.*

The Motion offers the Court a conclusory assurance that it "is not sought for the purpose of delay" and that "Towns Law Firm's withdrawal will not disrupt the lawsuit." ECF No. 115 ¶ 10. It does not disclose that there is unresolved discovery, by all accounts *within its own possession*, or the pending (and now filed) motion to compel. Nonpayment can be good cause. But an unpaid lawyer's interest is not the only interest the Court weighs. "[P]rejudice to third parties—who might have more to lose than the unpaid lawyer—is another potential ground for denying a motion to withdraw." *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 310 F.3d 537, 541 (7th Cir. 2002). Here, the third parties are Plaintiff and an absent class where class calling records run through the party, and, on the sworn testimony, the law firm, that has them.

Other courts have declined to treat withdrawal in this posture as ministerial. In *Spoon v. NVA Financial Services, LLC*, No. 26-cv-69, ECF No. 18 (E.D. Va. May 1, 2026), a TCPA case in which the defendant appeared poised to take a default rather than produce class discovery, the

court reset the withdrawal hearing and ordered a corporate representative of defendant to appear. The same inquiry is warranted here, and here the Court has an identified person to ask: Mr. Muthaler.

**II. The calling records are the case, and they are in counsel's possession.**

In a TCPA class action the defendant's calling records are the evidence on which Rule 23 turns. The risk of losing them is not hypothetical. Courts have denied certification and entered judgment against TCPA plaintiffs precisely because the transmission and calling data could not be obtained. That is the outcome an unconditioned withdrawal invites here.

What distinguishes this case from the ordinary one is that the records appear to be locatable right now. Conversion Kings' principal testified under oath at the 341 Meeting that they are digitally stored and in the hands of the firm that filed this Motion. Documents in the possession, custody, or control of a party's attorney are within the party's control for purposes of Rule 34(a)(1), and pre-existing business records do not become privileged by being placed with counsel. *See Fisher v. United States*, 425 U.S. 391, 403-04 (1976) (pre-existing documents obtainable from the client may be obtained from the attorney after transfer). Towns Law Firm has not produced a privilege log, and it cannot simultaneously assert that it lacks authority to act for Conversion Kings and assert Conversion Kings' privilege over the company's ordinary business records.

The § 341 testimony also supplies, in outline, the answers Conversion Kings withheld, the fact that its own employees dialed the calls to Plaintiff, the calls were made for Caliber under a telemarketing contract, a staffing agency or call center supplied dialers at the end and its name is in the business records, and the financial records are with an accounting firm. The witnesses were unable to give details from memory precisely because the details live in the records, the records Plaintiff has been trying to obtain since 2023.

**III. Unconditioned withdrawal converts a discovery refusal into a permanent one and leaves a party that cannot participate.**

A limited liability company, like a corporation, may appear in federal court only through licensed counsel. *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 195 (1993). Where a corporate party fails to appear through counsel, default is the ordinary consequence. *See generally Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984) (per curiam); Fed. R. Civ. P. 55(a).

Plaintiff accepts that this case may end in a default against Conversion Kings. But a default is not a substitute for the discovery, and that is what makes this Motion different from the routine one. A default judgment against a defunct LLC is worth nothing to Plaintiff or the class. What has value, and what Plaintiff can obtain from no other source, is the *record of the calls Conversion Kings placed for Caliber*. Caliber is still here, represented, and solvent. Class certification, the scope of the campaign, and Caliber's vicarious liability for calls it did not itself dial all depend on Conversion Kings' records. Entering a default against Conversion Kings and permitting withdrawal resolves none of that; it removes the only parties who have this information.

Nor is the material necessarily beyond reach because Conversion Kings is defunct. A Chapter 7 debtor must surrender to the trustee "all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate." 11 U.S.C. § 521(a)(4). Property scheduled but not administered is abandoned to the debtor when the case closes, 11 U.S.C. § 554(c), while unscheduled property remains property of the estate, *id.* § 554(d), and the case may be reopened to administer it, *id.* § 350(b). Which of those paths applies here depends on facts Plaintiff does not yet have, whether the records were scheduled, whether they were surrendered to the Trustee, and whether copies remain with Towns Law Firm, Mr. Giles,

Mr. Muthaler, LeadMax LLC, Pox Accounting, or any other third party. Towns Law Firm is positioned to answer those questions. Once it withdraws, that knowledge leaves the case with it.

**IV. If the Court permits withdrawal, it should condition the order.**

Plaintiff's primary request is that the Motion be denied without prejudice to renewal after the outstanding discovery dispute, including possible production from the Towns Law Firm, is resolved, and that the Court set a schedule for Plaintiff's motion to compel. In the alternative, Plaintiff requests that any order granting withdrawal be conditioned as follows:

1. Towns Law Firm shall produce to Plaintiff the non-privileged Conversion Kings documents, data, and electronically stored information within its possession, custody, or control that are responsive to Plaintiff's outstanding written discovery, including any calling or dial records, campaign or lead files, vendor records, consent records, and agreements and communications with Caliber, or shall certify under oath that it has none, and shall serve a privilege log for anything withheld.

2. Towns Law Firm shall file a declaration identifying, to the extent of its knowledge, every person or entity believed to have custody of Conversion Kings' records, including Mr. Muthaler, LeadMax LLC, Mr. Wood, the Chapter 7 trustee, Pox Accounting, the staffing agency or call center that supplied dialers, and any dialing or telephony vendors, and stating whether Conversion Kings' records were scheduled in the bankruptcy, surrendered to the trustee under 11 U.S.C. § 521(a)(4), abandoned, sold, transferred, or destroyed, and if so, when and to whom.

3. Towns Law Firm shall preserve its client file and all Conversion Kings documents and data in its possession pending further order, and shall not destroy, return, or transfer that material absent leave of Court.

4. Conversion Kings' objections to Plaintiff's January 8, 2024 discovery responses, other than privilege, shall be deemed waived, or the Court shall set a briefing schedule on Plaintiff's motion to compel before withdrawal becomes effective.

5. Towns Law Firm shall serve the order granting withdrawal, the Second Amended Scheduling Order (ECF No. 113), and Plaintiff's outstanding discovery on Mr. Muthaler and Mr. Wood, with notice that Conversion Kings cannot appear except through licensed counsel and that failure to appear may result in default and other sanctions, and shall file proof of service.

6. The Court shall set a status conference and direct that Mr. Muthaler appear on behalf of Conversion Kings to address whether substitute counsel will be retained, whether Conversion Kings intends to defend, and the location and disposition of the company's business records.

7. Withdrawal shall be without prejudice to Plaintiff's right to seek entry of default under Rule 55(a) and production from Caliber of any Conversion Kings material in Caliber's possession, custody, or control.

## CONCLUSION

Twice now, Plaintiff has told Conversion Kings' counsel that he was going to take an unresolved discovery dispute to the Court, and twice the response has been a filing that takes Conversion Kings out of the case. The Court need not decide why that happened to decide what to do about it. The calling records at the center of this case were demanded in 2023, refused in January 2024, and, on Conversion Kings' own sworn testimony, have been in its lawyers' possession ever since. Those lawyers should not be released from the case until the Court has resolved what becomes of the records.

Plaintiff respectfully requests that the Court deny the Motion without prejudice pending resolution of the outstanding discovery, or in the alternative grant it only upon the conditions in Part IV, and grant such other and further relief as the Court deems just and proper.

**Dated: August 31, 2026**

*/s/ Andrew Perrong*
Andrew Perrong
Email: a@perronglaw.com
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Telephone: (215) 225-5529

**Certificate of Service**

I, hereby certify that on August 31, 2026, I served the foregoing by filing a copy via CM/ECF.

*/s/ Andrew Perrong*
Andrew Perrong
Email: a@perronglaw.com
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Telephone: (215) 225-5529